# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### EASTERN DIVISION

| | | |
|---|---|---|
| **CHARLES ANTHONY MOSEMAN,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **vs.** | ) | **1:18-cv-08007-LSC** |
| | ) | **(1:16-cr-00027-LSC-HNJ)** |
| | ) | |
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| **Respondent.** | ) | |

## MEMORANDUM OF OPINION

### I.    Introduction

This is a motion to vacate, set aside, or correct a sentence pursuant to 28 U.S.C. § 2255, filed by Petitioner Charles Anthony Moseman ("Moseman") on March 5, 2018, as well as a brief in support. (Docs. 1 & 2.) Moseman challenges the 120-month sentence of imprisonment imposed after he pleaded guilty to being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). The Government has filed a response in opposition to Moseman's motion (doc. 7), and

Moseman has replied (doc. 8). For the following reasons, the § 2255 motion is due to be denied.[1]

## II.    Background

In accordance with a plea agreement, on March 31, 2016, Moseman pleaded guilty to one count of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). The plea agreement contained the provision that the Government would recommend that Moseman be incarcerated for a term consistent with the low end of the advisory U.S. Sentencing Guidelines range. (Crim. Doc. 11 at 5).

A Presentence Investigation Report ("PSR") was prepared. (Crim. doc. 16.) The PSR guideline range for imprisonment was 120 to 150 months, but because the statutory maximum sentence was 120 months, 120 months' imprisonment became the guideline range. (*Id.* at 23). Moseman's counsel filed objections to the PSR, challenging a two-level firearm enhancement and a four-level possession of a firearm in connection with another felony enhancement. (Crim. Doc. 13). At the sentencing hearing, this Court heard the objections by Moseman's counsel but

---

[1]    Moseman has also filed a motion asking the Court to rule on his § 2255 motion in his favor because the Government did not respond to his § 2255 motion within the time frame as set out by this Court. (Doc. 6). Contrary to Moseman's assertion, the Government's response brief was timely filed because the Government sought, and received, an extension of time in which to file it. (*See* docs. 4 & 5.) Accordingly, the motion for a ruling (doc. 6) is **DENIED**.

overruled Moseman's objections and sentenced him to 120 months of imprisonment. Judgment was entered on September 9, 2016.

Moseman appealed the sentence to the Eleventh Circuit Court of Appeals. The United States filed a motion to dismiss the appeal pursuant to the appeal waiver in Moseman's plea agreement. On March 30, 2017, the Eleventh Circuit granted the United States's motion to dismiss the appeal pursuant to the appeal waiver.

This is Moseman's first motion filed under 28 U.S.C. § 2255, and it is timely. Moseman remains in custody.

## III.    Discussion

In litigation stemming from a § 2255 motion, "'[a] hearing is not required on patently frivolous claims or those which are based upon unsupported generalizations. Nor is a hearing required where the . . . [movant's] allegations are affirmatively contradicted by the record.'" *Holmes v. United States*, 876 F.2d 1545, 1553 (11th Cir. 1989) (quoting *Guerra v. United States*, 588 F.2d 519, 520-21 (5th Cir. 1979)). However, it is appropriate for the Court to conduct an evidentiary hearing if, "'accept[ing] all of the . . . [movant's] alleged facts as true,'" the movant has "'allege[d] facts which, if proven, would entitle him to relief.'" *Diaz v. United States*, 930 F.2d 832, 834 (11th Cir. 1991) (internal citations omitted).

Moseman attacks his sentence with several claims. First, he argues that the sentence appeal waiver in his plea agreement was not knowing and voluntary because this Court failed to adequately explain the waiver to him. Second, he argues that his defense counsel was constitutionally ineffective for failing to respond to the United States's motion to dismiss his appeal and the Eleventh Circuit's subsequent dismissal. Last, he argues that the United States breached his plea agreement and that his counsel was ineffective for allowing the United States to breach the plea agreement.

A.      **The claim that Moseman's appeal waiver in his plea agreement was not knowing and voluntary because the Court failed to discuss the appeal waiver at his change of plea proceeding**

Moseman claims that this Court did not specifically discuss with him the appeal waiver in his plea agreement at his change of plea hearing. In support, Moseman cites *United States v. Bushert*, 997 F.2d 1343 (11th Cir. 1993), arguing that the Court, as in that case, generalized the plea and invoked confusion on whether an appeal waiver existed. Because Moseman's first claim is wholly contradicted by the record, it fails.

Moseman expressly waived the right to appeal his sentence as part of his plea agreement. (*See* Crim. Doc. 11 at 6-7). The portion of the written plea agreement addressing the waiver reads as follows:

In consideration of the recommended disposition of this case, I, CHARLES ANTHONY MOSEMAN, hereby waive and give up my right to appeal my conviction and/or sentence in this case, as well as any fines, restitution, and forfeiture orders that the Court might impose. Further, I waive and give up the right to challenge my conviction and/or sentence, any fines, restitution, forfeiture orders imposed or the manner in which my conviction and/or sentence, any fines, restitution, and forfeiture orders were determined in any post-conviction proceeding, including, but not limited to, a motion brought under 28 U.S.C. § 2255.

The defendant reserves the right to contest in an appeal or post-conviction proceeding any or all of the following:

(a) Any sentence imposed in excess of the applicable statutory maximum sentence(s);

(b) Any sentence imposed in excess of the guideline sentencing range determined by the court at the time sentence is imposed; and

(c) Any claims of ineffective assistance of counsel.

The defendant acknowledges that before giving up these rights, the defendant discussed the Federal Sentencing Guidelines and their application to defendant's case with the defendant's attorney, who explained them to the defendant's satisfaction. The defendant further acknowledges and understands that the government retains its right to appeal where authorized by statute.

I, CHARLES ANTHONY MOSEMAN, hereby place my signature on the line directly below to signify that I fully understand the foregoing paragraphs, and that I am knowingly and voluntarily entering into this waiver.

(*See id.*) Moseman signed the agreement immediately following this language, in

addition to signing the overall plea agreement at the end of the document. (*See id.*)

During the change of plea hearing, this Court questioned Moseman about the plea agreement and specifically addressed the appeal waiver, as follows:

| | |
|---|---|
| THE COURT: | Okay. Now, plea agreements are permitted but you have to tell me about it. Your lawyer and the Government have filed a document called "plea agreement" and it appears to have your initials on it. Your lawyer's showing you a copy of that. Have you seen that document before? |
| THE DEFENDANT: | Yes, sir. |
| THE COURT: | Are those your initials in the bottom right corner of each page? |
| THE DEFENDANT: | Yes, sir. |
| THE COURT: | Turn, if you will, to page four. Is that your signature? |
| THE DEFENDANT: | Yes, sir. |
| THE COURT: | When you signed it there on page four, were you stipulating and agreeing that the factual basis that precedes your signature is true and correct and I should rely upon it? |
| THE DEFENDANT: | Yes. |
| THE COURT: | And you have read this document, right? |
| THE DEFENDANT: | Yes. |
| THE COURT: | Your lawyer has gone over this document with you? |

| | |
|---|---|
| THE DEFENDANT: | Yes, sir. |
| THE COURT: | Does it state all the agreement you have with the Government? |
| THE DEFENDANT: | Yes. |
| THE COURT: | On page seven, is that your signature? |
| THE DEFENDANT: | Yes, sir. |
| THE COURT: | When you signed it there, were you acknowledging that you had waived or given up your right to appeal or to file a post conviction petition except in the limited circumstances set forth above your signature? |
| THE DEFENDANT: | Yes. |
| THE COURT: | And is that your signature there on page 13? |
| THE DEFENDANT: | Yes, it is, sir. |

(Crim. Doc. 27 at 14-15).

In *Bushert*, the Eleventh Circuit concluded that, while sentence appeal waivers are enforceable, they must be made knowingly and voluntarily, and it was not clear that the defendant in that particular case understood that he was waiving his appeal rights or the full significance of his sentence appeal waiver. 997 F.2d at 1350-52. The court stated: "[A] waiver is not knowingly or voluntarily made if the district court fails to specifically question the defendant concerning the waiver

provision of the plea agreement during the [Federal] Rule [of Criminal Procedure] 11 colloquy and the record indicates that the defendant did not otherwise understand the full significance of the waiver." *Id.* at 1351 (quoting *United States v. Marin*, 961 F.2d 493, 496 (4th Cir. 1992)). The court continued to state that, in order to demonstrate that a sentence appeal waiver should be enforced, the Government must show that either: "(1) the district court specifically questioned the defendant concerning the sentence appeal waiver during the Rule 11 colloquy, or (2) it is manifestly clear from the record that the defendant otherwise understood the full significance of the waiver." *Id.* During the Rule 11 colloquy in that case, the district court informed the defendant of the following: "Do you also understand that under some circumstances you or the government may have the right to appeal any sentence that the Court imposes, do you understand that?" *Id.* The Eleventh Circuit determined that the district court did not clearly convey to the defendant that he was giving up his right to appeal under *most* circumstances, and the generalization that the defendant could appeal his sentence under *some* circumstances was insufficient and constituted reversible error. *Id.* at 1353.

In sharp contrast here, this Court advised Moseman that he was waiving his right to appeal his sentence with the exception of the limited circumstances as set forth in the plea agreement. (Crim. Doc. 27 at 14-15). The limited circumstances

that this Court referred to included any sentence imposed in excess of the statutory maximum sentence, any sentence imposed in excess of the guideline sentencing range, or any claims of ineffective assistance of counsel. This Court specifically questioned Moseman about the appeal waiver, and he raised no questions or expressed any concerns. Moseman represented that he read the agreement and reviewed it with his attorney. For all of these reasons, the appeal waiver in Moseman's plea agreement was entered into knowingly and voluntarily and Moseman is not entitled to relief on this claim.

**B.    The claim that defense counsel was ineffective for failing to respond to the Government's motion to dismiss Moseman's appeal due to the appeal waiver and for failing to respond to the Eleventh Circuit's subsequent dismissal of his appeal**

Claims of ineffective assistance of counsel may be raised for the first time in a § 2255 motion and are therefore not subject to procedural bar. *Massaro v. United States*, 538 U.S. 500, 504 (2003). Post-conviction relief will not be granted on a claim of ineffective assistance of trial counsel unless the petitioner can show not only that counsel's performance was deficient but also that such deficient performance prejudiced his defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). More specifically, the petitioner must show that: (1) his counsel's representation fell below an objective standard of reasonableness; and (2) there is a

reasonable probability that, but for his counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* at 687-88.

In applying this framework, the Court should be "highly deferential" in evaluating counsel's performance and must bear in mind that "a fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged performance, and to evaluate the conduct from counsel's perspective at the time." *Id.* at 689. The Court must also indulge a strong presumption that counsel's performance falls within the "wide range of reasonable professional assistance." *Id.*; *see Bell v. Cone*, 535 U.S. 685, 702 (2002) (holding that "tactical decisions about which competent lawyers might disagree" do not qualify as objectively unreasonable). A petitioner who seeks to overcome this presumption does not carry his burden by offering bare accusations and complaints, but rather "must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Strickland*, 466 U.S. at 690.

Where a petitioner fails to show that his counsel's performance fell below an objective standard of reasonableness, the court need not address the issue of prejudice. *See Holladay v. Haley*, 209 F.3d 1243, 1248 (11th Cir. 2000). Where the court does consider this prong, the petitioner must show that counsel's errors were

prejudicial and deprived the defendant of a "fair trial, a trial whose result is reliable." *Strickland*, 466 U.S. at 687. This burden is met by establishing by a reasonable probability that the outcome of the proceeding would have been different but for counsel's errors. *Williams v. Threatt*, 529 U.S. 362, 391-93 (2000); *Strickland*, 466 U.S. at 692.

As to the first prong of the test dealing with the "objective standard of reasonableness," the Supreme Court has held that an attorney who fails to file an appeal after being instructed to by his client acts in a professionally unreasonable manner. *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000). An attorney has a duty to consult with the client about pursuing an appeal when there is reason to think that a rational defendant would want an appeal or when this particular defendant reasonably demonstrated to counsel that he was in interested in appealing his case. *Id*. at 480.

Here, Moseman's defense counsel did file an appeal on Moseman's behalf, after he was instructed to do so by Moseman. Counsel also filed an initial brief arguing two issues: the substantive reasonableness of Moseman's sentence and whether this Court committed plain error in denying Moseman's objections to the PSR at Moseman's sentencing. Thereafter, the Government moved to dismiss the appeal due to the appeal waiver in Moseman's plea agreement. Moseman contends

that his counsel should have filed a brief in response to the Government's motion to dismiss the appeal that cited *Bushert* in support of his claim that the sentence appeal waiver portion of his plea agreement was not entered into knowingly and voluntarily. However, as discussed in the previous section, *Bushert* does not support Moseman's claim and actually supports the United States's position that the appeal waiver was valid. Indeed, in dismissing Moseman's appeal, the Eleventh Circuit relied upon *Bushert* for the proposition that sentence appeal waivers are enforceable if made knowingly and voluntarily, as Moseman's was in this case. (*See* Crim. Doc. 29 at 1.) Thus, defense counsel was not deficient in failing to file a response brief citing case law that was contrary to Moseman's claim, and which actually supported the United States's position that the appeal waiver was valid and enforceable. Therefore, Moseman's second claim is meritless.

C.     **The claim that the United States breached the plea agreement and that defense counsel was ineffective for allowing it to do so**

Moseman next argues that the United States breached his plea agreement by failing to recommend a low-end guideline range of imprisonment and that defense counsel was ineffective for allowing it to do so. The record again contradicts his claim.

As stated, Moseman's plea agreement included the provision that the United States would recommend that he be incarcerated for a term consistent with

the low end of the advisory U.S. Sentencing Guidelines range. (Crim. Doc. 11 at 5). After Moseman pled guilty, a PSR was prepared, which reflected a total offense level of 27 and a criminal history category of V, resulting in a presumptive guideline range of 120-150 months' imprisonment for the felon in possession of a firearm count to which Moseman pled guilty. (Crim. Doc. 16 at 23). However, the PSR also noted that because the statutorily-authorized maximum sentence was 120 months, the guidelines range was 120 months. (*Id.*) The PSR increased Moseman's offense level by two levels under U.S.S.G. § 2K2.1(b)(1)(A) because the offense involved three to seven firearms. (*Id.* at 9 ¶ 23.) The PSR stated that Moseman received this enhancement because he admitted to handling one firearm that was recovered from under the driver's seat in the vehicle he was driving and four firearms were recovered from the hotel room where he was staying when he was arrested. (*Id.*) The PSR also increased Moseman's offense level by four levels under U.S.S.G. § 2K2.1(b)(6)(B) because he used a firearm in connection with another felony offense. (*Id.* at ¶ 24.) The PSR stated that Moseman received this enhancement based upon "(1) the drugs, paraphernalia, and other items found near or in the same container with the guns in the defendant's hotel room; (2) the defendant's conduct in driving Waldrup to a pharmacy to purchase Pseudo product with a gun

in the vehicle; and (3) the defendant's admission that he smoked meth in the hotel room where guns were located." (*Id.*)

Moseman's counsel filed objections to the PSR. (Crim. Doc. 13). He challenged the two-level enhancement to the offense level for three-to-seven-firearms, arguing that only two of the five firearms retrieved by law enforcement were operating as designed when test-fired. Moseman's counsel also challenged the four-level enhancement, arguing that no evidence was presented in the factual basis of the plea agreement that either of the charged firearms were used in any other criminal offense.

At the sentencing hearing, this Court heard the objections raised by Moseman's counsel as well as testimony offered by the Government of an expert in firearms examination who examined the firearms at issue in order to determine whether they constituted firearms under federal law and of an agent with the Talladega County Drug Task Force who was present at Moseman's arrest. This Court overruled Moseman's objections to the PSR. This Court then stated that it was adopting the factual statements contained in the PSR and made the specific findings that the Guidelines offense level was 27, the criminal history category was V, and the advisory guideline range was 120 months' imprisonment because that was the maximum statutory range of punishment allowed in the case. (Crim. Doc.

28 at 49.) This Court asked the Government for its sentencing recommendation, to which counsel for the Government responded with its recommendation of 120 months' imprisonment. Moseman's counsel also argued for a downward variance from the guidelines sentence. This Court pronounced a sentence of 120 months' imprisonment on the felon in possession of a firearm count.

Moseman claims that before his change of plea proceeding, defense counsel told him that "the Government and counsel agreed to a 70-87 month guideline range and the Government would only seek the low end of such a range." (Doc. 2 at 21.) Moseman essentially argues that the Government breached its promise to recommend a low-end guideline sentence by offering testimony in order to prove that the two offense level enhancements were warranted. However, the Court asked Moseman at his change of plea proceeding if he understood that "[n]obody can tell you what the guideline range will be for sure until we get to your sentencing hearing and I rule on what comes in and what doesn't," to which Moseman responded that he understood. (Doc. 27 at 10-11.) Defense counsel could not object to the United States's recommendation, because the guideline range was 120 months. Defense counsel even argued for a downward variance from the guideline range. For these reasons, Moseman cannot establish that counsel's performance was deficient. *See Strickland*, 466 U.S. at 687-88.

## IV.  Conclusion

For the aforementioned reasons, Moseman's § 2255 motion is due to be denied without an evidentiary hearing and this action dismissed with prejudice.

Additionally, the Court declines to issue a certificate of appealability. This Court may issue a certificate of appealability "only if the applicant has a made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make such a showing, a "petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable and wrong," *Slack v. McDaniel*, 529 U.S. 473, 484 (2000), or that "the issues presented were adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (internal quotations omitted). Moseman's claims do not satisfy either standard. Accordingly, insofar as an application for a certificate of appealability is implicit in Moseman's motion, it is due to be denied.

A separate closing order will be entered.

**DONE** AND **ORDERED** ON NOVEMBER 28, 2018.

L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE

160704